## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Jonico, Inc. d/b/a Berlin Pharmacy, a )
Pennsylvania corporation, individually and )
as the representative of a class of all )
similarly situated persons and entities, )
                               )

           Plaintiff, )     Civil Action No.

   v. )     **CLASS ACTION**

                               )     **JURY TRIAL DEMANDED**
LucyRx Health Solutions, Inc., )

           Defendant. )

                               )

### CLASS ACTION COMPLAINT

Plaintiff, Jonico, Inc. d/b/a Berlin Pharmacy ("Plaintiff"), individually and on behalf of a class of similarly situated persons and entities, brings this action against LucyRx Health Solutions, Inc. ("LucyRx" or "Defendant") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), arising from facsimile advertisements sent by or on behalf of Defendant without prior express invitation or permission. Plaintiff alleges the following based upon personal knowledge as to itself and its own acts and experiences and, as to all other matters, upon information and belief formed after a reasonable investigation by counsel.

### PRELIMINARY STATEMENT

1. This is a junk fax class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, arising from Defendant LucyRx Health Solutions, Inc.'s transmission, or causing the transmission, of unsolicited facsimile advertisements to Plaintiff and other pharmacies.

2. Plaintiff Jonico, Inc. owns and operates Berlin Pharmacy, an independent community retail pharmacy in Berlin, Pennsylvania. On or about April 11, 2025, Plaintiff received

a LucyRx-branded fax on its telephone facsimile machine at Berlin Pharmacy.

3.      The retained page of the fax, attached as Exhibit A, bears LucyRx branding, is dated March 24, 2025, is addressed to "Dear Independent Pharmacist," and announces LucyRx's Sustaining Pharmacy Access & Rural Care Program, which LucyRx calls the "SPARC Program."

4.      LucyRx is a for-profit pharmacy benefit management and prescription-care company. Its business depends on pharmacy networks, prescription dispensing, pharmacy reimbursement arrangements, pharmacy claims processing, member access to pharmacies, and relationships with employers, health plans, plan sponsors, members, patients, pharmacies, and other prescription-care participants.

5.      Independent pharmacies are commercial counterparties and service providers in LucyRx's PBM and prescription-care business. Pharmacies dispense prescriptions, process prescription claims, provide pharmacy services to members and patients, and receive reimbursement through PBM, payor, and network arrangements.

6.      Exhibit A was directed to independent pharmacists in their commercial capacity as pharmacy providers. The fax did not concern Plaintiff's personal affairs, a patient-specific prescription, a claims-specific communication, or a regulatory notice unique to Berlin Pharmacy. It was a standardized LucyRx communication promoting a LucyRx program to pharmacy businesses.

7.      Exhibit A states that LucyRx launched SPARC as "a new initiative to increase per-prescription reimbursements for independent pharmacies in underserved areas." It further states that, through SPARC, eligible pharmacies benefit from "[h]igher per-prescription reimbursements to sustain operations," "[s]upport for essential services like vaccinations, medication therapy management, and health screenings," and "[s]tronger patient access in communities that rely on

2

independent pharmacies for care."

8.     Those stated benefits are economic and commercial benefits to pharmacy recipients. Higher per-prescription reimbursements are compensation paid or made available in connection with prescription dispensing and related pharmacy services. Vaccinations, medication therapy management, health screenings, and prescription dispensing are pharmacy services that pharmacies provide in the ordinary course of their commercial operations.

9.     Exhibit A also directs recipients to "Learn more about SPARC" on LucyRx's provider webpage at [www.lucyrx.com/providers/sparc](www.lucyrx.com/providers/sparc) and provides LucyRx's address, telephone number, and website. The fax therefore directed pharmacy recipients from the fax to LucyRx's provider-facing commercial resources concerning the SPARC Program.

10.     Exhibit A promoted more than a general public-health idea. It promoted a named LucyRx program that offered higher reimbursement and provider-support benefits to eligible pharmacies, while also promoting LucyRx's ability to maintain pharmacy access, support independent pharmacies, strengthen its pharmacy network, and provide PBM and prescription-care services to its members, clients, and other commercial stakeholders.

11.     By promoting SPARC to independent pharmacies, LucyRx promoted the commercial availability and quality of its reimbursement arrangements, pharmacy network, provider-support resources, pharmacy-access initiatives, PBM services, and prescription-care services.

12.     The fax was reasonably calculated to induce pharmacy recipients to view LucyRx favorably, learn more about SPARC, continue or improve their commercial relationship with LucyRx, dispense prescriptions and provide services to LucyRx members, support LucyRx's pharmacy-access and provider-network initiatives, and contribute to the value of LucyRx's PBM

3

and prescription-care services.

13.     Plaintiff did not request the fax, did not solicit it, and did not give LucyRx prior express invitation or permission to send it by facsimile transmission.

14.     The TCPA prohibits using a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. The TCPA authorizes statutory damages of $500 for each violation, permits treble damages for willful or knowing violations, and authorizes injunctive relief. Plaintiff brings this case individually and on behalf of a proposed class of similarly situated fax recipients.

## THE PARTIES

15.     Plaintiff Jonico, Inc. is a Pennsylvania corporation. Plaintiff owns and operates Berlin Pharmacy under the registered fictitious name Berlin Pharmacy.

16.     Berlin Pharmacy is a community retail pharmacy located at 413 N. Broadway Street, Berlin, Pennsylvania 15530.

17.     At all relevant times, Plaintiff maintained and used a telephone facsimile machine connected to facsimile number (814) 267-5283 to send and receive patient-specific, confidential, and urgent pharmacy and business communications.

18.     Defendant LucyRx Health Solutions, Inc. is a Delaware corporation. Its principal place of business is 7373 Wisconsin Ave Ste 910, Bethesda, MD 20814-3895. It is authorized to do business in Pennsylvania. Its Pennsylvania registered agent is Corporation Service Company, 5235 North Front Street, Harrisburg, PA 17110.

19.     Upon information and belief, LucyRx Health Solutions, Inc. operates, markets, or holds itself out under the trade name and brand "LucyRx."

4

20.     Upon information and belief, Defendant conducts, manages, participates in, or benefits from LucyRx's pharmacy benefit management, prescription care, pharmacy network, reimbursement, pharmacy-access, provider-support, and related commercial activities.

21.     LucyRx promotes itself as a next-generation pharmacy benefit management and prescription-care company that uses data, transparency, pharmacy networks, reimbursement programs, plan-design tools, and clinical or member-support resources to reduce prescription costs and improve healthcare outcomes.

22.     LucyRx is a for-profit enterprise. Its business includes pharmacy benefit management services, prescription-care services, provider and pharmacy network services, pharmacy reimbursement arrangements, formularies, plan-design support, member services, client services, and related programs sold to, provided to, or made commercially available for employers, health plans, plan sponsors, members, pharmacies, providers, patients, and other healthcare participants.

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

24.     This Court has personal jurisdiction over Defendant because Defendant is authorized to do business in Pennsylvania and purposefully directed conduct toward Pennsylvania by sending, authorizing, causing to be sent, or benefiting from a fax advertisement transmitted to Plaintiff's telephone facsimile machine in Berlin, Pennsylvania.

25.     Defendant also purposefully availed itself of the privilege of conducting business in Pennsylvania by marketing LucyRx, promoting the SPARC Program, maintaining or promoting pharmacy network services, reimbursing or offering reimbursement arrangements to pharmacies,

and seeking to increase the availability, use, goodwill, and commercial value of LucyRx's pharmacy benefit management and prescription-care services through pharmacies and pharmacists, including pharmacies and pharmacists in Pennsylvania.

26.    Plaintiff's claims arise out of or relate to Defendant's Pennsylvania-directed conduct, including the transmission of Exhibit A to Plaintiff in this District.

27.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Plaintiff received the fax advertisement at its telephone facsimile machine in Berlin, Pennsylvania, which is in Somerset County within the Western District of Pennsylvania.

28.    Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is subject to personal jurisdiction in this District for purposes of this action.

## FACTUAL ALLEGATIONS

29.    LucyRx is a pharmacy benefit manager and prescription-care company that markets commercial services to employers, health plans, plan sponsors, members, patients, pharmacies, and other healthcare and prescription-care participants.

30.    LucyRx's commercial business includes pharmacy benefit management services, prescription-care services, pharmacy network services, pharmacy reimbursement arrangements, formulary and plan-design services, member-support services, provider-support services, and related prescription-benefit programs.

31.    LucyRx's business depends on relationships with pharmacies. Pharmacies dispense prescriptions, process prescription claims, provide covered pharmacy services to members and patients, and receive reimbursement under PBM, payor, pharmacy-network, and prescription-benefit arrangements.

32.    LucyRx promotes its pharmacy benefit management and prescription-care services as including transparency, reduced prescription costs, improved outcomes, formulary optimization, real-time insights, support for employers and health plans, and patient-first solutions.

33.    LucyRx has publicly stated that it partners with approximately 60,000 pharmacies and serves over 1,200 clients nationwide.

34.    LucyRx maintains provider-facing resources for pharmacies, including resources concerning pharmacy network participation, pharmacy provider requirements, claims processing, payor sheets, appeals, provider support, and the SPARC Program.

35.    On or about March 18, 2025, LucyRx announced the launch of the SPARC Program, a named LucyRx initiative promoted as the Sustaining Pharmacy Access & Rural Care Program.

36.    LucyRx's SPARC FAQ describe the SPARC Program as designed to help ensure independent pharmacies in underserved communities remain viable by increasing per-prescription reimbursements, promoting community-based healthcare initiatives, and advocating for legislative reforms.

37.    LucyRx's March 18, 2025 SPARC press release described the SPARC Program as supporting pharmacies operating in "pharmacy deserts," which LucyRx described as areas with limited access to essential pharmacy services.

38.    Lu LucyRx's SPARC FAQ state that eligible pharmacies will receive higher per-prescription reimbursements to help sustain operations and ensure continued access to medications, vaccinations, medication therapy management, and health screenings.

39.    LucyRx's SPARC FAQ state that SPARC benefits pharmacies by providing increased reimbursement rates to help sustain operations, recognizing pharmacies as key

7

healthcare hubs that offer critical patient services, and ensuring long-term financial viability in communities that need them most.

40. LucyRx's SPARC FAQ state that if a pharmacy is in a designated pharmacy desert and serves LucyRx members, it will automatically receive higher reimbursements starting in 2026.

41. LucyRx's SPARC FAQ state that, by strengthening independent pharmacies, SPARC helps lower healthcare costs, improve medication adherence, and create better health outcomes for employees and their families.

42. On or about April 11, 2025, Defendant, directly or through one or more agents acting on its behalf, sent or caused to be sent to Plaintiff a facsimile transmission consisting of two pages. Plaintiff has retained the second page, which contains the LucyRx advertisement. A true and correct copy of that retained advertising page is attached as Exhibit A.

43. Plaintiff did not retain page 1 of 2 of the transmission. Upon information and belief, page 1 was a cover page and did not alter the commercial content of page 2 of 2.

44. The header on Exhibit A shows that the fax was sent to Plaintiff's facsimile number, +18142675283, which corresponds to Plaintiff's facsimile number, (814) 267-5283, at Berlin Pharmacy. The header also shows that the retained page was page 2 of 2 and was transmitted on April 11, 2025 at 11:14 a.m.

45. Exhibit A bears LucyRx branding, is dated March 24, 2025, and is addressed "Dear Independent Pharmacist."

46. Exhibit A tells independent pharmacists that their pharmacy is "a lifeline for your community" and states that, for too many independent pharmacies, "shrinking reimbursements and rising costs threaten long-term sustainability."

47. Exhibit A states that LucyRx launched the SPARC Program as "a new initiative to

increase per-prescription reimbursements for independent pharmacies in underserved areas."

48.    Exhibit A states that LucyRx's goal through SPARC is to "help keep independent pharmacies remain viable so they can continue providing essential prescription care."

49.    Exhibit A states that, through the SPARC Program, eligible pharmacies benefit from "[h]igher per-prescription reimbursements to sustain operations."

50.    Exhibit A also states that eligible pharmacies benefit from "[s]upport for essential services like vaccinations, medication therapy management, and health screenings."

51.    Exhibit A also states that eligible pharmacies benefit from "[s]tronger patient access in communities that rely on independent pharmacies for care."

52.    Exhibit A states that LucyRx believes independent pharmacies are essential to better healthcare access and that, when pharmacies are strong, communities are healthier.

53.    Exhibit A directs recipients to "Learn more about SPARC" on LucyRx's website at www.lucyrx.com/providers/sparc.

54.    Exhibit A closes, "We look forward to working together, The Pharmacy Advocacy Team at LucyRx."

55.    Exhibit A was directed to pharmacies and pharmacists in their commercial capacity as pharmacy providers. It was not a patient-specific prescription communication, claim-specific communication, regulatory notice unique to Plaintiff, or private correspondence concerning Plaintiff's account.

56.    Exhibit A promoted a named LucyRx program under which eligible pharmacies would receive increased reimbursement in connection with prescription dispensing and related pharmacy services.

57.    Higher per-prescription reimbursement is compensation paid or made available to

9

pharmacies in connection with dispensing prescriptions, processing prescription claims, serving covered members or patients, and providing pharmacy services.

58. The pharmacy services identified in Exhibit A, including vaccinations, medication therapy management, health screenings, and prescription care, are services that pharmacies provide in the ordinary course of their commercial operations.

59. By promoting higher per-prescription reimbursements and support for pharmacy services, Exhibit A promoted the commercial availability and quality of LucyRx's reimbursement arrangements, pharmacy network relationships, provider-support resources, pharmacy-access initiatives, PBM services, and prescription-care services.

60. By directing recipients to LucyRx's provider webpage, Exhibit A directed pharmacy recipients to LucyRx's provider-facing resources concerning SPARC and LucyRx's pharmacy-related programs and services.

61. Exhibit A promoted LucyRx's ability to support independent pharmacies, maintain pharmacy access, strengthen pharmacy service availability, and provide prescription-care services through its pharmacy network and reimbursement arrangements.

62. The commercial value of LucyRx's PBM and prescription-care services depends in part on pharmacy participation, pharmacy access, pharmacy network adequacy, pharmacy reimbursement arrangements, member access to pharmacies, and the willingness of pharmacies to dispense prescriptions and provide pharmacy services to LucyRx members and patients.

63. Exhibit A was reasonably calculated to cause pharmacy recipients to learn more about SPARC, view LucyRx favorably, continue or improve their commercial relationship with LucyRx, dispense prescriptions and provide pharmacy services to LucyRx members or patients, and support LucyRx's pharmacy-access and provider-network initiatives.

64.    Exhibit A was also reasonably calculated to support LucyRx's ability to market, sell, administer, and retain PBM and prescription-care services for employers, health plans, plan sponsors, members, patients, and other commercial stakeholders by promoting the strength, adequacy, and quality of LucyRx's pharmacy network and reimbursement programs.

65.    Exhibit A was not an isolated personal communication. Upon information and belief, it was a standardized form fax sent as part of one or more organized facsimile advertising campaigns to independent pharmacies, pharmacies in or near underserved areas, pharmacies in or near alleged pharmacy deserts, healthcare providers, healthcare businesses, and/or other recipients.

66.    Upon information and belief, Defendant or its agents selected fax recipients from lists of pharmacies, pharmacists, healthcare providers, healthcare businesses, or other entities believed to be useful targets for the commercial promotion of LucyRx, the SPARC Program, LucyRx's pharmacy network, LucyRx's reimbursement arrangements, LucyRx's provider-support resources, and LucyRx's PBM and prescription-care services.

67.    Plaintiff did not request or solicit Exhibit A.

68.    Defendant did not have Plaintiff's prior express invitation or permission to send Exhibit A to Plaintiff's fax number.

69.    Exhibit A, the first page of the unsolicited advertisement, contains no opt-out notice.

### CLASS REPRESENTATION ALLEGATIONS

70.    Plaintiff brings this action individually and on behalf of a proposed class of similarly situated persons and entities under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

71.    Plaintiff proposes the following Class:

11

All persons and entities who, on or after four years before the filing of this action, were sent one or more facsimile transmissions by or on behalf of LucyRx Health Solutions, Inc. as part of a mass fax campaign promoting LucyRx, the Sustaining Pharmacy Access & Rural Care ("SPARC") Program, or LucyRx's products, programs, services, pharmacy network, reimbursement arrangements, provider-support resources, pharmacy-access initiatives, pharmacy benefit management services, prescription-care services, or related commercial offerings.

72.    Excluded from the Class are LucyRx Health Solutions, Inc., including its parents, subsidiaries, affiliates, officers, directors, employees, agents, and any entity in which LucyRx Health Solutions, Inc. has a controlling interest; the judge assigned to this action and the judge's staff; and members of their immediate families.

73.    Plaintiff reserves the right to amend, modify, or refine the Class definition and to seek certification of one or more subclasses after discovery, including subclasses limited to recipients of faxes substantially similar to Exhibit A, recipients for whom Defendant lacks records of prior express invitation or permission, or recipients who received faxes through a particular fax broadcaster, transmission platform, campaign, or recipient list.

### Numerosity

74.    The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, Exhibit A and substantially similar faxes were sent through a standardized promotional campaign to numerous pharmacies, pharmacists, healthcare providers, healthcare businesses, and/or other recipients.

### Ascertainability

75.    The precise number and identities of Class members can be determined from records maintained by Defendant and third parties, including fax logs, transmission reports, recipient lists, marketing databases, suppression lists, CRM records, provider records, pharmacy network records, SPARC Program records, consent records, vendor records, and records

12

maintained by any fax broadcaster or transmission service used for the campaign.

**Commonality**

76. There are questions of law and fact common to the Class.

77. Common questions include, without limitation:

a. whether Defendant sent, authorized, caused to be sent, or is otherwise responsible for the facsimile transmissions at issue;

b. whether the facsimile transmissions were sent as part of one or more mass fax campaigns;

c. whether the facsimile transmissions constitute advertisements within the meaning of 47 U.S.C. § 227(a)(5);

d. whether the facsimile transmissions advertised the commercial availability or quality of any property, goods, or services;

e. whether the facsimile transmissions were directed to pharmacists, pharmacies, healthcare providers, healthcare businesses, or other recipients to promote LucyRx's commercial relationships, pharmacy network, reimbursement arrangements, member access, provider support, customer retention, client retention, or pharmacy benefit management and prescription-care services;

f. how Defendant or its agents obtained, compiled, selected, uploaded, transmitted, stored, and recorded the targeted facsimile numbers;

g. whether Defendant maintained records identifying the recipients, fax numbers, transmission dates, transmission results, fax templates, campaigns, recipient lists, consent records, opt-out records, vendors, and

transmission platforms for the facsimile transmissions at issue;

h.   whether Defendant had prior express invitation or permission to send the facsimile transmissions at issue;

i.   whether Defendant can establish an established-business-relationship defense for any recipient or campaign;

j.   whether the facsimile transmissions included a clear and conspicuous opt-out notice that complied with the TCPA and its implementing regulations;

k.   whether Defendant is directly liable, vicariously liable, or both, for the conduct alleged;

l.   whether Plaintiff and the Class are entitled to statutory damages of $500 per violation;

m.   whether Defendant's violations were knowing or willful, and whether the Court should increase the statutory damages under 47 U.S.C. § 227(b)(3); and

n.   whether Plaintiff and the Class are entitled to injunctive relief.

**Typicality**

78.   Plaintiff's claims are typical of the claims of the Class because Plaintiff and the Class were sent fax advertisements as part of the same course of conduct, suffered the same type of statutory injury, and assert claims under the same statute and legal theories.

**Adequacy of Representation**

79.   Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class. Plaintiff understands its duties as a proposed class representative and has retained counsel experienced in TCPA class action litigation and complex class actions.

14

**Predominance**

80.     The common questions predominate over questions affecting only individual members.

**Superiority**

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages for individual recipients are relatively modest compared with the cost of individual litigation, and absent a class action, many violations would likely go unremedied.

82.     Class treatment will promote judicial economy by resolving common questions in one proceeding, including whether Defendant's standardized fax transmissions were unsolicited advertisements, whether they lacked legally required opt-out notices, and whether Defendant is liable for statutory damages.

**COUNT I**

**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Class)**

83.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

84.     The TCPA makes it unlawful to use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C. § 227(b)(1)(C).

85.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services" transmitted without the recipient's prior express invitation or permission. 47 U.S.C. § 227(a)(5).

86.     The TCPA protects fax recipients from the nuisance, disruption, invasion of privacy, cost-shifting, and operational burdens imposed by unwanted fax advertisements.

87.     Defendant is a "person" within the meaning of the TCPA.

88.     Defendant sent, or caused to be sent, Exhibit A and substantially similar fax transmissions to Plaintiff and the Class.

89.     Exhibit A and the substantially similar fax transmissions were unsolicited advertisements within the meaning of 47 U.S.C. § 227(a)(5).

90.     Exhibit A and the substantially similar fax transmissions advertised the commercial availability or quality of LucyRx, the SPARC Program, LucyRx's pharmacy benefit management services, prescription-care services, pharmacy network services, pharmacy reimbursement arrangements, provider-support resources, pharmacy-access initiatives, and related commercial products, programs, and services.

91.     Exhibit A was directed to independent pharmacists, identified LucyRx by name, announced LucyRx's SPARC Program, described SPARC as a LucyRx initiative to increase per-prescription reimbursements for independent pharmacies, identified economic and provider-support benefits available to eligible pharmacies, and directed recipients to LucyRx's SPARC provider webpage.

92.     Exhibit A and the substantially similar fax transmissions promoted a commercial opportunity for pharmacies to receive reimbursement, including higher per-prescription reimbursement, in connection with prescription dispensing, claims processing, vaccination, medication therapy management, health screening, prescription-care, patient-access, and related pharmacy services.

93.     Exhibit A and the substantially similar fax transmissions promoted LucyRx's commercial relationships with pharmacies by encouraging pharmacy recipients to learn about SPARC, view LucyRx favorably, support LucyRx's pharmacy-access initiatives, continue or

16

improve their commercial relationship with LucyRx, and provide pharmacy services to LucyRx members and patients.

94.    Exhibit A and the substantially similar fax transmissions also promoted the commercial availability and quality of LucyRx's PBM and prescription-care business by promoting LucyRx's ability to support independent pharmacies, maintain pharmacy access, strengthen pharmacy network adequacy, administer reimbursement arrangements, and provide prescription-care services through pharmacy providers.

95.    Exhibit A and the substantially similar fax transmissions had a commercial purpose and profit aim because LucyRx's PBM and prescription-care business depends on pharmacy participation, pharmacy reimbursement arrangements, pharmacy network adequacy, member access to pharmacies, prescription dispensing, claims processing, client retention, customer retention, and the commercial value of LucyRx's pharmacy network and related services.

96.    The fact that Exhibit A used terms such as "Announcement," "support," "access," "community," or "underserved areas" does not make the fax noncommercial. The fax promoted a named LucyRx program and described concrete economic benefits for eligible pharmacies, including higher per-prescription reimbursements, in connection with LucyRx's commercial PBM and prescription-care business.

97.    Plaintiff did not give Defendant prior express invitation or permission to send Exhibit A by facsimile transmission.

98.    Upon information and belief, Defendant did not have prior express invitation or permission to send the substantially similar fax transmissions to the Class.

99.    Defendant is liable because it sent the fax transmissions, authorized them, caused them to be sent, or had them sent on its behalf.

100.    Defendant is also liable for fax transmissions sent by its agents, vendors, contractors, marketing partners, fax broadcasters, and other persons who acted with Defendant's actual authority, apparent authority, or authority later ratified by Defendant.

101.    Exhibit A does not contain a notice advising recipients how to opt out of future fax advertisements. Upon information and belief, Exhibit A and the substantially similar fax advertisements did not include a clear and conspicuous opt-out notice satisfying the TCPA and its implementing regulations.

102.    Defendant cannot establish an established-business-relationship defense for any unsolicited fax advertisement that lacked the opt-out notice required by 47 U.S.C. § 227(b)(1)(C), 47 U.S.C. § 227(b)(2)(D), and the TCPA's implementing regulations.

103.    Defendant's violations were knowing or willful because Defendant intentionally sent, authorized, or caused the sending of Exhibit A and substantially similar fax advertisements without the recipients' prior express invitation or permission.

104.    As a result of Defendant's violations, Plaintiff and each Class member are entitled to statutory damages of $500 for each violation of the TCPA. 47 U.S.C. § 227(b)(3).

105.    Plaintiff does not seek recovery of actual monetary damages.

106.    If the Court determines that Defendant's violations were knowing or willful, Plaintiff and each Class member are entitled to an award of up to three times the amount otherwise available under 47 U.S.C. § 227(b)(3).

107.    Plaintiff and the Class are also entitled to injunctive relief prohibiting Defendant from sending unsolicited fax advertisements that violate the TCPA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant and award the following relief:

A.    certifying this case as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

B.    appointing Plaintiff as representative of the Class;

C.    appointing Plaintiff's counsel as counsel for the Class;

D.    awarding Plaintiff and the Class statutory damages of $500 for each violation of the TCPA;

E.    increasing the statutory damages award up to three times for Defendant's knowing or willful violations;

F.    entering appropriate injunctive relief prohibiting Defendant from sending unsolicited fax advertisements that violate the TCPA;

G.    awarding Plaintiff and the Class pre-judgment and post-judgment interest to the extent permitted by law;

H.    awarding Plaintiff and the Class their costs and any other amounts allowed by law; and

I.    awarding such other and further relief as the Court deems just and proper.

19

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 9, 2026.

Respectfully submitted,

Jonico, Inc. d/b/a Berlin Pharmacy,
individually and as the representative
of a class of all similarly situated persons
and entities,

By:  *John C. Evans*          .
John C. Evans (Pa. ID 49351)
JC Evans Law, PC
5001 Pendleton Way # 5119
Cranberry Township, PA 16066
Telephone: 412-389-2477
Email: JCEvans@JCEvansLaw.com

Phillip A. Bock (*pro hac vice forthcoming*)
David M. Oppenheim (*pro hac vice forthcoming*)
Class Lawyers, LLC dba Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Suite 2100
Chicago, IL 60601
Telephone: 312-658-5501
Email: service@classlawyers.com

***ATTORNEYS FOR PLAINTIFFS***